# Nos. 18-15499, 18-15502, 18-15503, 18-16376

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

| | |
|---|---|
| COUNTY OF SAN MATEO,<br>*Plaintiff-Appellee*<br>*v.*<br>CHEVRON CORPORATION, *et al.*,<br>*Defendants-Appellants* | No. 18-15499<br>No. 17-cv-4929-VC<br>N.D. Cal., San Francisco<br>Hon. Vince Chhabria |
| CITY OF IMPERIAL BEACH,<br>*Plaintiff-Appellee*<br>*v.*<br>CHEVRON CORPORATION, *et al.*,<br>*Defendants-Appellants* | No. 18-15502<br>No. 17-cv-4934-VC<br>N.D. Cal., San Francisco<br>Hon. Vince Chhabria |
| COUNTY OF MARIN,<br>*Plaintiff-Appellee*<br>*v.*<br>CHEVRON CORPORATION, *et al.*,<br>*Defendants-Appellants* | No. 18-15503<br>No. 17-cv-4935-VC<br>N.D. Cal., San Francisco<br>Hon. Vince Chhabria |
| COUNTY OF SANTA CRUZ, *et al.*,<br>*Plaintiff-Appellee*<br>*v.*<br>CHEVRON CORPORATION, *et al.*,<br>*Defendants-Appellants* | No. 18-16376<br>Nos. 18-cv-00450-VC;<br>18-cv-00458-VC; 18-cv-00732-VC<br>N.D. Cal., San Francisco<br>Hon. Vince Chhabria |

**BRIEF OF THE NATIONAL LEAGUE OF CITIES; THE U.S. CONFERENCE OF MAYORS; AND THE INTENRATIONAL MUNICIPAL LAWYERS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE**

Michael Burger
MORNINGSIDE HEIGHTS LEGAL SERVICES, INC.
Columbia Environmental Law Clinic
435 W. 116th St.
New York, NY 10027
212-854-2372
*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the National League of Cities, the U.S. Conference of Mayors and the International Municipal Lawyers Association ("Local Government Amici"), by and through their undersigned attorney, hereby certify that they each have no parent corporation and that no publicly held corporation owns 10% or more of any of their stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT......................................................i

TABLE OF AUTHORITIES.........................................................................iii

STATEMENT OF IDENTIFICATION..................................................................1

BACKGROUND..............................................................................................5

ARGUMENT...............................................................................................10

I. FEDERALISM PRINCIPLES REQUIRE APPELLATE REVIEW OF THE DISTRICT COURT'S REMAND ORDER BE LIMITED TO THE ISSUE CONGRESS EXPRESSLY EXCEPTED……………………………….…10

II. THERE ARE NO "UNIQUELY FEDERAL INTERESTS" AT STAKE IN THIS CASE SUFFICIENT TO REQUIRE CONVERSION OF PLAINTIFF'S STATE LAW CLAIMS INTO FEDERAL LAW CLAIMS OR TO CONFER FEDERAL JURISDICTION ..........................................................................................................15

III. THE DISPLACEMENT OF A FEDERAL COMMON LAW CAUSE OF ACTION FOR NUISANCE REQUIRES THE STATE LAW CAUSE OF ACTION BE TREATED ON ITS OWN TERMS...............................................................................19

CONCLUSION............................................................................................23

CERTIFICATE OF SERVICE………………………………………………24

CERTIFICATE OF COMPLIANCE…………………………………...…25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abbatiello v. Monsanto Co.*,
522 F. Supp. 2d 524 (S.D.N.Y. 2007)....................................................................8

*Am. Elec. Power, Co. v. Connecticut*
564 U.S 410 (2011)..............................................................................19, 20

*Am. Fuel & Petrochemical Manufacturers v. O'Keeffe*,
903 F.3d 903 (9th Cir. 2018)……………………………………...………16, 17

*Appalachian Volunteers, Inc. v. Clark*,
432 F.2d 530 (6th Cir. 1970)…………………………………………………13

*California v. General Motors Corp.*,
2007 WL 2726871 (N.D. Cal. Sept. 17, 2007)....................................................21

*Carter v. Evans*,
601 Fed. Appx. 527 (9th Cir. 2015)…………………………..……..……..11

*City of Chicago v. Am. Cyanamid Co.*,
823 N.E.2d 126 (Ill. App. Ct. 2005)....................................................................7

*City of Cincinnati v. Beretta U.S.A. Corp.*,
768 N.E.2d 1136 (Ohio 2002)..............................................................................6

*City of Gary v. Smith & Wesson Corp.*,
801 N.E.2d 1222 (Ind. 2003)................................................................................6

*City of Greenwood, Miss. v. Peacock*,
384 U.S. 808 (1966)………………………………..……………………12

*City of Milwaukee v. Illinois*,
451 U.S. 304 (1981)...........................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES CONT'D

*City of Milwaukee v. NL Indus.*,
762 N.W.2d 757 (Wis. Ct. App. 2008)....................................................7

*City of New York v. BP P.L.C.*,
325 F. Supp. 3d 466 (S.D.N.Y. 2018)……………………..……………………...8

*City of New York v. BP P.L.C.*,
No. 18-2188 (2d Cir. July 26, 2018)……………………...……………………….....8

*City of Oakland v. BP P.L.C.*,
325 F. Supp. 3d 1017 (N.D. Cal. 2018)....................................................8

*City of Oakland v. BP P.L.C.*,
No. 18-16663 (9th Cir. Sept. 4, 2018)......................................................8

*City of Portland v. Monsanto Co.*,
2017 WL 4236583 (D. Or. Sept. 22, 2017)……………………..………..……….7

*City of Spokane v. Monsanto Co.*,
2016 WL 6275164 (E.D. Wa. Oct. 26, 2016)……………………………..……….8

*City of St. Louis v. Benjamin Moore & Co.*,
226 S.W.3d 110 (Mo. 2007)..........................................................................7

*City of Walker v. Louisiana*,
877 F.3d 563 (5th Cir. 2017)……………………………………..…………11, 14

*Cleveland v Ameriquest*,
621 F. Supp. 2d 513 (N.D. Ohio 2009)....................................................7

*Coal. for Competitive Elec. v. Zibelman*,
272 F. Supp. 3d 554 (S.D.N.Y. 2017)....................................................18

## TABLE OF AUTHORITIES

**Page(s)**

## CASES CONT'D

*Columbia Pac. Bldg. Trades Council v. City of Portland*,
412 P.3d 258 (Or. Ct. App. 2018)....................18

*Comer v. Murphy Oil USA*,
585 F.3d 855 (5th Cir. 2009)....................22

*Comer v. Murphy Oil USA*,
607 F.3d 1049 (5th Cir. 2010)....................22

*ConAgra Grocery Prod. Co. v. California*,
2018 WL 3477388 (U.S. Oct. 15, 2018)....................7

*Electric Power Supply Association v. Star*,
904 F.3d 518 (7th Cir. 2018)....................18

*Energy and Env't Legal Inst. v. Epel*,
43 F. Supp. 3d 1171 (D. Colo. 2014)....................18

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
463 U.S. 1 (1983)....................21

*In re Comer*,
562 U.S. 1133 (2011)....................22

*In re Lead Paint Litig.*,
924 A.2d 484 (N.J. Sup. Ct. 2007)....................7

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
725 F.3d 65 (2d Cir. 2013)....................7

## TABLE OF AUTHORITIES

Page(s)

### CASES CONT'D

*In re: National Prescription Opiate Litigation*,
1:17-MD-2804 (N.D. Ohio Dec. 8, 2017)....................7

*Int'l Paper Co. v. Ouellette*,
479 U.S. 481 (1987)....................20

*Jacks v. Meridian Res. Co.*,
701 F.3d 1224 (8th Cir. 2012)....................13, 14

*Little v. Louisville Gas & Elec. Co.*,
805 F.3d 695 (6th Cir. 2015)....................20

*Lu Junhong v. Boeing Co.*,
792 F.3d 805 (7th Cir. 2015)....................13

*McCullough v. Evans*,
600 Fed. Appx. 577 (9th Cir. 2015)....................11

*Merrick v. Diageo Ams. Supply, Inc.*,
805 F.3d 685 (6th Cir. 2015)....................20

*Mulcahey v. Columbia Organic Chemicals Co., Inc.*,
29 F.3d 148 (4th Cir. 1994)....................11

*N.Y. Trap Rock Corp. v. Town of Clarkstown*,
299 N.Y. 77, 85 N.E.2d 873 (1949)....................5

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
696 F.3d 849 (9th Cir. 2012)....................19, 20, 21

*Native Vill. of Kivalina v. Exxon Mobil Corp.*,
663 F. Supp. 2d 863 (N.D. Cal. 2009)....................20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES CONT'D

*Patel v. Del Taco, Inc.*,
446 F.3d 996 (9th Cir. 2006)……………………..……………………………..…11

*People v. ConAgra Grocery Prod. Co.*,
227 Cal. Rptr. 3d 499 (Ct. App. 2017)...................................................................7

*Robertson v. Ball*,
534 F.2d 63 (5th Cir. 1976)……………………………………………………...13

*Rocky Mtn. Farmers v. Corey*,
730 F.3d 1070 (9th Cir. 2013)...........................................................................18

*Rocky Mtn. Farmers v. Corey*,
2019 WL 254686 (9th Cir. Jan. 19 2019)………..…………………………….....18

*Sherwin-Williams Co. v. California*,
2018 WL 3477401 (U.S. Oct. 15, 2018) ..............................................................7

*State v. Lead Indus., Ass'n, Inc.*,
951 A.2d 428 (R.I. 2008)......................................................................................7

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981)............................................................................................15

*Univ. of S. Alabama v. Am. Tobacco Co.*,
168 F.3d 405 (11th Cir. 1999)………………………………………………......12

*U.S. Bank Nat'l Ass'n v. Azam*,
582 Fed. Appx. 710 (9th Cir. 2014)……………………………………………..11

*White v. Smith & Wesson Corp.*,
97 F. Supp. 2d 816 (N.D. Ohio 2000)...................................................................7

## STATUTES

28 U.S.C.
§ 1292……………………………………..……………………………….14
§ 1442…………………………………………………….………………10, 11
§ 1443………………………….…………………………..…10,11, 12, 13
§ 1447……………………………………………..........3, 10, 11, 12, 13, 14
§ 1453…………………………………………………………………….14

Cal. Health & Safety Code § 38501..................................................................16

N.Y. Community Risk and Resiliency Act, Assemb. B. A6558A;
S.B. S6617A 2014 N.Y. Sess. Laws Ch. 355 (S. 6617-B)
(McKinney) 335.......................................................................................17

Or. Rev. Stat. § 468A.200(3)…………………………………………….…16

Pub. L. No. 112-51, 125 Stat. 545 (2011).....................................................10, 12

## LEGISLATIVE MATERIALS

H.R. Rep. 112-17 (2011),
*reprinted in* 2011 U.S.C.C.A.N. 420……………………...…………………11, 12

## OTHER AUTHORITIES

2 M. Keely et al., *Ch. 11: Built Environment, Urban System, and Cities* in Impacts, Risks, and Adaptation in the United States: The Fourth National Climate Assessment (D.R. Reidmiller et al. eds., 2018)……………….………………2

15A Charles Alan Wright et al., Fed. Prac. & Proc. Juris.
§ 3914.11 (2d ed.) ………………………………………………………….…13

Center for Climate and Energy Solutions, State Climate Policy Maps,
https://www.c2es.org/content/state-climate-policy/ (last visited Jan. 24, 2019)….17

## OTHER AUTHORITIES CONT'D

Sarah L. Swan, *Plaintiff Cities*,
71 Vand. L. Rev. 1227 (2017)....................................................................6

William L. Prosser, *Private Action for Public Nuisance*,
52 Va. L. Rev. 997 (1966)........................................................................5

## STATEMENT OF IDENTIFICATION[1]

Local Government Amici comprises three of the nation's leading local government associations. The National League of Cities (NLC) is the oldest and largest organization representing municipal governments throughout the United States. Its mission is to strengthen and promote cities as centers of opportunity, leadership, and governance. Working in partnership with forty-nine State municipal leagues, NLC serves as a national advocate for more than 19,000 cities and towns, representing more than 218 million Americans. Its Sustainable Cities Institute serves as a resource hub for climate change mitigation and adaptation for cities. The U.S. Conference of Mayors (USCM) is the official non-partisan organization of U.S. cities with a population of more than 30,000 people (approximately 1,400 cities in total). USCM is home to the Mayors Climate Protection Center, formed to assist with implementation of the Mayors Climate Protection Agreement. The International Municipal Lawyers Association (IMLA) is a nonprofit, nonpartisan professional organization consisting of more than 2,500 members. The membership

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E) *amici* states that no party's counsel authored this brief, and no party, party's counsel, or person other than *amici* or its members or counsel contributed financial support intended to fund the preparation or submission of this brief.

is composed of local government entities, including cities and counties, and subdivisions thereof, as represented by their chief legal officers, state municipal leagues, and individual attorneys. IMLA serves as an international clearinghouse of legal information and cooperation on municipal legal matters. Established in 1935, IMLA is the oldest and largest association of attorneys representing United States municipalities, counties, and special districts.

Over eighty percent of Americans now live in urban areas, and even more of them work there; as a consequence, Local Government Amici's members are responsible for understanding the risks to and planning for the wellbeing of the great majority of Americans. The concentration of people, activity, and infrastructure in cities makes them uniquely valuable economically. It also serves to compound the adverse impacts of a host of climatic changes, including sea level rise; increasingly frequent and severe storms that pose immediate threats to human life and critical infrastructure; damaged and disappearing coastlines; degraded ecosystems and reduced ecosystem services function; increases in heat-related deaths; poor air quality and exacerbated health problems; longer droughts that combine with increased temperatures and water evaporation rates to strain water supplies; and heightened wildfire risk. *See* 2 M. Keely et al., *Ch. 11: Built Environment, Urban System, and Cities* in Impacts, Risks, and Adaptation in the United States: The Fourth National Climate Assessment 444–447 (D.R. Reidmiller et al. eds., 2018).

Local Government Amici's interests in this case are twofold. First, as representatives of local governments nationwide, amici are particularly sensitive to the needs for a balanced federal-state judicial system. This case, which seeks a determination of local government parties' rights under state law, raises a critical federalism issue: the appropriate scope of appellate review of a district court's remand order under 28 U.S.C. § 1447(d). Allowing any defendant to obtain plenary review of all aspects of a remand order just by including an argument for federal officer removal would fundamentally disrupt local governments' ability to litigate claims brought under state law in state courts, and would incentivize inclusion of meritless federal officer removal claims and increased attempts to appeal remand orders due to that inclusion. Second, should the Court extend its review beyond this limitation, Local Government Amici have a unique interest in the Court's proper recognition of state court jurisdiction over state law claims for injuries arising from climate change impacts. The district court properly found that it lacked subject matter jurisdiction over Plaintiffs' state law claims. Judicial conversion of a variety of well pled state law claims into vaguely defined federal common law claims, and the exercise of federal jurisdiction over them Defendants seek, would fundamentally threaten to intrude upon municipal governments' authority, within our federalist system, to rely on state law and state courts to seek redress for harms that, in a contemporary world defined by complex economic and environmental systems that

transcend multiple borders, arise in significant part beyond their jurisdictions but nonetheless have highly localized impacts.

The district court's decision in this case is fully consistent with essential federalism principles, and recognizes the right of local governments to bring state law claims for climate change harms in state courts. Local Government Amici respectfully urge this Court to limit the scope of its review to the sole issue properly before it, concerning Defendants' meritless claim of federal officer jurisdiction. Should the Court review other aspects of the district court's remand order it should affirm the decision to remand for lack of subject matter jurisdiction and sustain the viability of Plaintiffs' state law claims.

Local Government Amici file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure and Circuit Rule 29-3. All parties to the appeal have consented to the filing of this brief.

## BACKGROUND

State law public nuisance, product liability, trespass, negligence, and other tort claims provide an important means for cities and local governments to seek abatement of and damages for localized harms arising from activities that cross jurisdictional boundaries, as well as justice for their residents suffering those harms, including their most vulnerable populations. Cities have, for instance, long employed state common law public nuisance to address conduct offensive to the community, from environmental pollution to red light districts, as an exercise of their inherent and reserved police power. *See* William L. Prosser, *Private Action for Public Nuisance*, 52 Va. L. Rev. 997 (1966) (tracing the history of public nuisance). As the New York Court of Appeals noted some 80 years ago, in a statement emblematic of conditions nationwide:

> "[W]here the public health is involved, the right of the town to bring such an action to restrain a public nuisance may be tantamount to its right of survival… [I]t is clear that a public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit. The right to exist necessarily implies the right to take such steps as are essential to protect existence."

*N.Y. Trap Rock Corp. v. Town of Clarkstown*, 299 N.Y. 77, 84, 85 N.E.2d 873, 877-78 (1949). In this long history courts have always played a crucial role, balancing competing interests to determine where there has been an "unreasonable

interference" with a public right. State and federal legislation addressing particular social problems has undoubtedly reduced the domain of public nuisance, but it has not eliminated it. The same can be said of other tort, product liability, and trespass claims. Indeed, these causes of action continue to play a vital role for cities, allowing cities to play a *parens patriae*-like role on behalf of their residents, and offering an opportunity to hold private actors accountable for harms that result from their products and activities.

Cities' use of state law claims, in both state and federal courts, to address cross-jurisdictional issues began more than three decades ago, when cities joined state attorneys general litigating asbestos and tobacco claims.[2] *See* Sarah L. Swan, *Plaintiff Cities*, 71 Vand. L. Rev. 1227, 1233 (2017). In the mid-1990s, cities again sought to protect their residents by suing the gun industry, invoking state public nuisance, among other claims. *See, e.g.*, *City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1227 (Ind. 2003) (upholding claims for public nuisance, negligent sale, negligent design, and misleading and deceptive advertising); *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (upholding claims for

---

[2] New York City, San Francisco, and Los Angeles, along with Cook County, Illinois, and Erie County, New York, all joined the 1998 Master Settlement Agreement. *See* Nat'l Ass'n of Attorneys Gen., Master Settlement Agreement, exh. N, at http://www.naag.org/assets/redesign/files/msa-tobacco/MSA.pdf (last visited Nov. 14, 2018).

public nuisance, negligence, negligent design, and failure to warn); *White v. Smith & Wesson Corp.*, 97 F. Supp. 2d 816, 829 (N.D. Ohio 2000) (allowing public nuisance and negligent design claims). Another decade later, cities pursued state public nuisance, tort, and product liability claims to abate the harms caused by the gasoline additive MTBE and lead paint. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013); *People v. ConAgra Grocery Prod. Co.*, 227 Cal. Rptr. 3d 499, 598 (Ct. App. 2017), *reh'g denied* (Dec. 6, 2017), *review denied* (Feb. 14, 2018), *cert. denied sub nom. ConAgra Grocery Prod. Co. v. California*, 2018 WL 3477388 (U.S. Oct. 15, 2018), and *cert. denied sub nom. Sherwin-Williams Co. v. California*, 2018 WL 3477401 (U.S. Oct. 15, 2018); *City of Milwaukee v. NL Indus.*, 762 N.W.2d 757, 770 (Wis. Ct. App. 2008); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 458 (R.I. 2008); *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. Sup. Ct. 2007); *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 116 (Mo. 2007); *City of Chicago v. Am. Cyanamid Co.*, 823 N.E.2d 126, 140 (Ill. App. Ct. 2005). In recent years, cities have brought similar cases against financial institutions for the consequences of the subprime mortgage crisis, against pharmaceutical companies to help carry the costs needed to address the opioid epidemic, and against Monsanto to compensate for harms from Polychlorinated Biphenyl (PCB) contamination. *See, e.g.*, *In re: National Prescription Opiate Litigation*, 1:17-MD-2804 (N.D. Ohio Dec. 8, 2017); *Cleveland*

*v Ameriquest*, 621 F. Supp. 2d 513, 536 (N.D. Ohio 2009); *City of Portland v. Monsanto Co.*, 2017 WL 4236583 (D. Or. Sept. 22, 2017); *City of Spokane v. Monsanto Co.*, 2016 WL 6275164 (E.D. Wa. Oct. 26, 2016)*; Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 541 (S.D.N.Y. 2007).

All of these cases involved claims under state law, and *none* of them saw a state law claim judicially converted into a federal claim, much less converted into a federal claim for the purpose of conferring federal jurisdiction, only to be displaced by federal statute. In this respect, the district court's decision stands in line with a consistent body of jurisprudence that has sustained the availability of state claims for complex cases like this one. (The only decisions to come out the other way are *City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017, 1028 (N.D. Cal. 2018), *appeal docketed*, *City of Oakland v. BP, P.L.C.*, No. 18-16663 (9th Cir. Sept. 4, 2018), and *City of New York v. BP P.L.C.*, 325 F. Supp. 3d 466, 1028 (S.D.N.Y. 2018), *appeal docketed*, *City of New York v. BP P.L.C.*, No. 18-2188 (2d Cir. July 26, 2018), both of which adopt the basic reasoning underlying Defendants' arguments here.)

The district court's decision should be affirmed. As Plaintiffs argue in their brief and in their Motion for Partial Dismissal, and as discussed further below, the Court should cabin its review of the district court's decision, and address only the narrow question of whether removal is warranted due to federal officer jurisdiction. As Plaintiffs further argue, remand was appropriate because Plaintiffs' claims do not

arise under federal law, are not completely preempted by the Clean Air Act, do not raise disputed and substantial federal issues, and do not fit into the other narrow categories Defendants proffer that might support removal.

This is, in short, a case against product manufacturers that sounds in nuisance, negligence, and strict liability for design defect and failure to warn under state law and, in light of those manufacturers' conduct, seeks to recover costs expended by local governments to address foreseeable harms suffered as a result of the intended use of their products, along with other relief. There are no "uniquely federal interests" at stake in this case. This is not a case about regulating greenhouse gas emissions in other states, or controlling federal fossil fuel leasing programs on public lands, or dictating foreign governments' climate policies or energy regimes. This case raises textbook claims under state law, seeking to allocate fairly a portion of the significant costs required to protect city and county residents from harms inflicted by Defendants' products. Ultimately, uniform adjudication of the financial burdens local governments bear for climate change adaptation measures might or might not be desirable public policy, but it is not necessary, and the law does not command it. The district court accurately perceived the extraordinary implications of Defendants' arguments to the contrary. Its decision should be upheld.

# ARGUMENT

## I. FEDERALISM PRINCIPLES REQUIRE APPELLATE REVIEW OF THE DISTRICT COURT'S REMAND ORDER BE LIMITED TO THE ISSUE CONGRESS EXPRESSLY EXCEPTED

The district court properly remanded this case to state court since no basis for removal to federal court applies, including federal officer jurisdiction pursuant to 28 U.S.C. § 1442(a)(1). *See* Order Granting Mot. to Remand; Pl. Br. 12–23. In reviewing the district court's remand order, this Court should limit its review to the question of whether removal was required due to federal officer jurisdiction. *See* Pl. Br. 11–12; Pl. Mot. for Partial Dismissal 8–22. This limitation, which is consistent with the plain meaning, legislative history, and 9th Circuit precedent for Section 1447(d), preserves the balance of federalism Congress sought to protect.

Appellate review of remand orders is generally barred; however, 28 U.S.C. § 1447(d) creates two limited exceptions. 28 U.S.C. § 1447(d). An appellate court has jurisdiction to review whether a case was properly removed under 28 U.S.C. § 1443 (civil rights removal provision) or 28 U.S.C. § 1442(a)(1) (federal officer removal provision). The second basis, federal officer removal, was added in 2011. Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545. The Removal Clarification Act of 2011 simply added the words "1442 or" into Section 1447(d) so that Section 1447(d) now reads:

> "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."

Congress intended for this new addition to be identical to the civil rights exception. H.R. REP. 112-17, at 7 (2011), *reprinted in* 2011 U.S.C.C.A.N. 420, 425 ("Section 2(d) amends Section 1447 by permitting judicial review of Section 1442 cases that are remanded, *just as they are* with civil rights cases.") (emphasis added).

That the provisions are to be treated the same is important. This Court has for more than a decade limited the scope of appellate review of remand orders to the question of whether removal was proper under Section 1443 when interpreting the civil rights removal exception. *See Patel v. Del Taco Inc.*, 446 F.3d 996, 998 (9th Cir. 2006); *Carter v. Evans*, 601 Fed. Appx. 527, 528 (9th Cir. 2015); *McCullough v. Evans*, 600 Fed. Appx. 577, 578 (9th Cir. 2015); *U.S. Bank Nat'l Ass'n v. Azam,* 582 Fed. Appx. 710, 711 (9th Cir. 2014). *Accord City of Walker v. Louisiana*, 877 F.3d 563, 566 n.2 (5th Cir. 2017). The Court must treat appellate review of decisions on Section 1442 removal just as it does decisions on Section 1443 removal.

Federalism principles also require this Court to "strictly construe" Section 1447(d). *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we

must strictly construe removal jurisdiction."); *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly."); *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 831 (1966) ("[T]he provisions of § 1443(1) do not operate to work a wholesale dislocation of the historic relationship between the state and the federal courts in the administration of the . . . law."). Indeed, federalism motivated the Removal Clarification Act of 2011, through which Congress specifically sought to protect federal officers from being brought into state courts under state pre-civil suit discovery statutes. H.R. REP. 112-17, at 3, 2011 U.S.C.C.A.N. at 422 ("The purpose of the law is to take from state courts the indefeasible power to hold a Federal officer or agent criminally or civilly liable for an act allegedly performed in the execution of their Federal duties."). Far from expanding the scope of appellate review to entire remand orders, an expansion that would tip the federalist scale in significant and unpredictable ways, Congress' amendment of the removal statute was concerned with preserving the existing balance of power between state and federal courts in regards to federal officers. Following this Court's precedent of reading Section 1447(d) to limit appellate review to the grounds that fall within Section 1447(d)'s exception adheres to that intent.

The Chamber of Commerce, as Amicus Curiae, offers an alternative interpretive approach to Section 1447(d), in support of a broader reading of its clear limitations that would have this Court review the entire remand order. *See* Br. of Chamber of Commerce. None of the arguments the Chamber offers in support of its approach hold water. First, the Commerce argues, based on a section of the Wright & Miller treatise that influenced the Seventh Circuit in *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 812 (7th Cir. 2015), that a plain reading of Section 1447(d) favors review of the whole order. *Id.* at 17–18. However, Wright & Miller itself plainly acknowledges that "it has been held that review is limited to removability under § 1443." 15A Wright et al., Fed. Prac. & Proc. Juris. § 3914.11 (2d ed.). As the Eighth Circuit explained, "[t]he plain language of § 1447(d) governs this" result. *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1229 (8th Cir. 2012). Second, the Chamber similarly relies on Wright & Miller and *Lu Junhong* to argue that a broader review does not cause undue delay, thereby frustrating the purpose of the general ban on appeal of remand orders. Br. of Chamber of Commerce 18-19. Yet, there is no evidence to support this view, it runs against both Congressional intent and common sense, and most circuits, including this one, have not adopted it. *See e.g.*, *Appalachian Volunteers, Inc. v. Clark*, 432 F.2d 530, 533 (6th Cir. 1970) (stating that "the review of issues other than those directly related to the propriety of the remand order itself would frustrate the clear Congressional policy of expedition");

*Robertson v. Ball*, 534 F.2d 63, 66 n.5 (5th Cir. 1976) (warning against Section 1447(d) exceptions serving as a "dilatory tactic").

Third, although the Chamber of Commerce posits that broader review is consistent with appellate procedure in other contexts such as 28 U.S.C. § 1292(b) and 28 U.S.C. § 1453 or the Class Action Fairness Act (CAFA), both Section 1292(b) and CAFA are distinguishable from Section 1447(d). As Plaintiffs argue, Section 1292(b) simply does not establish a general rule for the scope of appellate appeal for statutes using the word "order." Pl. Mot. for Partial Dismissal 21. Furthermore, while some circuits have read CAFA to allow for broader review, other courts have correctly determined that "jurisdiction to review a CAFA remand order stops at the edge of the CAFA portion of the order." *City of Walker*, 877 F.3d at 567. *See also Jacks v. Meridian Res. Co.*, 701 F.3d at 1229. Finally, the Chamber makes a federalism argument, but conflates separate issues of law in so doing. The narrow exception Congress created for federal officer removal is governed by a different standard of law than diversity and federal question jurisdiction, all of which the Chamber incorrectly collapses into "federal interests." Br. of Chamber of Commerce 28.

The language of the statute, Congressional intent, established circuit precedent, and federalism principles all support limiting the scope of appellate

review to Section 1447(d)'s stated exceptions. Although Defendants attempt to wedge the federal door open with federal officer removal to allow for appeal of removal grounds that are not reviewable, this Court should consider only the meritless claim of federal officer removal on appeal.

## II. THERE ARE NO "UNIQUELY FEDERAL INTERESTS" AT STAKE IN THIS CASE SUFFICIENT TO REQUIRE CONVERSION OF PLAINTIFF'S STATE LAW CLAIMS INTO FEDERAL LAW CLAIMS OR TO CONFER FEDERAL JURISDICTION

The district court properly concluded that it lacks subject matter jurisdiction in this case because regardless of the transboundary nature of anthropogenic climate change there are no "uniquely federal interests" at issue in this case that require that the state law claims be treated as a matter of federal law. The Supreme Court has described cases involving such "uniquely federal interests" as those "narrow areas [that are] . . . concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981) (citation omitted). As the district court concluded and as Plaintiffs persuasively argue in their brief, this case invokes none of those concerns. This holds true whether Defendants seek to frame Plaintiffs' claims as "arising under" federal common law, as raising disputed and substantial federal

issues, or as being completely preempted. As Plaintiffs rightly point out, the first two arguments are masks for more straightforward preemption arguments properly addressed by state courts, and the last argument is simply wrong. Pl. Br. 24–48.

The reasoning underlying Defendants' argument that there are "uniquely federal interests" at stake in this matter would, if adopted by this Court, pose a risk to cities and counties across the country. If endorsed, such reasoning could empower federal common law to hold domain over a broad swath of policy areas, and federal courts to claim jurisdiction over a wide array of state law claims, subverting cities' and other local governments' ability to rely on traditional legal tools in state courts to pursue remedies for environmental harms, among other things.

This potential outcome is especially worrisome in the context of climate change. Climate change directly impacts subnational governmental interests. *See e.g.*, *Am. Fuel & Petrochemical Manufacturers v. O'Keeffe*, 903 F.3d 903, 913 (9th Cir. 2018) ("[S]tates have a legitimate interest in combating the adverse effects of climate change on their residents."). *See also*, Cal. Health & Safety Code § 38501 (2017) (finding that greenhouse gas emissions are degrading the State's air quality, reducing the quantity and quality of available water, increasing risks to public health, damaging the State's natural environment and causing sea levels to rise); Or. Rev. Stat. § 468A.200(3) (finding that "[g]lobal warming poses a serious threat to the economic well-being, public health, natural resources and environment of Oregon");

N.Y. Community Risk and Resiliency Act, Assemb. B. A6558A; S.B. S6617A 2014 N.Y. Sess. Laws Ch. 355 (S. 6617-B) (McKinney) 335 (requiring that state environmental agency adopt science-based sea-level rise projections into regulation and that applicants for permits or funding in a number of specified programs demonstrate that future physical climate risk due to sea-level rise, storm surge and flooding have been considered). As a result, States have taken a wide array of actions to combat climate change, including adopting adaptation or resilience plans. These efforts require the expenditure of significant funds and use of public resources. *See* Center for Climate and Energy Solutions, State Climate Policy Maps, https://www.c2es.org/content/state-climate-policy/ (last visited Jan. 24, 2019).

Cities have also been at the forefront of climate action. At last count, 1,060 mayors have joined the U.S. Conference of Mayors' Climate Protection Agreement. Some 280 cities and counties have joined the "We Are Still In" coalition, a group of more than 3,600 mayors, county executives, governors, tribal leaders, college and university leaders, businesses, faith groups, and investors who have committed to take action consistent with the United States' Paris Agreement commitments. In addition to the resources provided by Local Government Amici to their members, national and transnational peer networks such as Climate Mayors, Carbon Neutral Cities Alliance, C40, and ICLEI – Local Governments for

Sustainability have been formed to provide cities, city political leaders, and city agency staff with support and capacity to take on climate change challenges.

Importantly, courts have routinely upheld subnational climate actions in the face of challenges that they interfere with national interests or priorities and affirmed the legitimacy of state interests in climate action. *See, e.g.*, *Am. Fuel & Petrochemical Manufacturers v. O'Keeffe, supra* (upholding Oregon's low carbon fuel standard against dormant commerce clause challenge); *Rocky Mtn. Farmers v. Corey*, 2019 WL 254686 (9th Cir. Jan. 19 2019) (upholding California's low carbon fuel standard against preemption and dormant commerce clause challenge and noting it reflects "legitimate state interest"); *Rocky Mtn. Farmers v. Corey*, 730 F.3d 1070, 1106–07 (9th Cir. 2013) (same); *Electric Power Supply Association v. Star*, 904 F.3d 518 (7th Cir. 2018) (upholding Illinois promoting zero-carbon energy sources against dormant commerce cause and preemption by the Federal Power Act); *Coal. for Competitive Elec. v. Zibelman*, 272 F. Supp. 3d 554, 559 (S.D.N.Y. 2017) (holding New York State program promoting zero-carbon energy sources did not violate dormant commerce cause), *aff'd* 906 F.3d 41 (2d Cir. 2018); *Energy and Env't Legal Inst. v. Epel*, 43 F. Supp. 3d 1171 (D. Colo. 2014) (finding Colorado renewable energy mandate did not violate dormant commerce clause). *Cf. Columbia Pac. Bldg. Trades Council v. City of Portland*, 412 P.3d 258 (Or. Ct. App. 2018) (holding zoning ordinance banning new and expanded fossil fuel export terminals

did not violate dormant commerce clause but not reaching whether reducing greenhouse gasses is a legitimate local interest due to other interests supporting city's decision).

This consistent treatment by the courts of state and local efforts affirms that global climate change is also a local problem, requiring local solutions. As discussed in Part III below, courts have also, until recently, upheld the availability of state law claims for climate harms. This Court should keep this case in line with precedent.

## III. THE DISPLACEMENT OF A FEDERAL COMMON LAW CAUSE OF ACTION FOR NUISANCE REQUIRES THE STATE LAW CAUSE OF ACTION BE TREATED ON ITS OWN TERMS

As Plaintiffs argue in their brief, the district court properly remanded the case based, in part, on its determination that that the displacement of any federal common law claims by the Clean Air Act gives life to Plaintiffs' state law claims. *See* District Ct. Order 1–3; Pl. Br. 29–33. The district court was entirely correct in its understanding of the relationship between displacement and the viability of state law claims in state courts.

The Supreme Court, as all parties to the present litigation acknowledge, directly addressed the displacement of federal public nuisance in *Am. Elec. Power, Co. v.* Connecticut, 564 U.S. 410, 424 (2011) (*AEP*), explaining that "the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek

abatement" of GHG emissions. This Court, following the Supreme Court's precedent, held "if a cause of action is displaced, displacement is extended to all remedies," including damages. *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 857 (9th Cir. 2012) (*Kivalina*). Neither *AEP* nor *Kivalina* foreclosed a public nuisance claim based on state law, nor the availability of state courts to adjudicate such a claim.

Indeed, they did just the opposite. The Supreme Court's express view is that the existence of a federal common law claim that has been displaced by federal legislation does *not* erase the possibility of state law claims; rather, it converts the availability of state claims into an ordinary question of statutory preemption. *See City of Milwaukee v. Illinois,* 451 U.S. 304, 327-329 (1981); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987). Accordingly, in her opinion for a unanimous court in *AEP*, Justice Ginsburg wrote, "In light of our holding that the Clean Air Act displaces federal common law, the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal Act." *AEP*, 564 U.S. at 429. *See also Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 690 (6th Cir. 2015) and *Little v. Louisville Gas & Elec. Co.*, 805 F.3d 695, 698 (6th Cir. 2015) (state common law nuisance for interstate pollution not preempted by Clean Air Act).

This Court's decision in *Kivalina* further supports proceeding with the state law claims in this case. Discussing the supplemental state law claims filed there, the

Ninth Circuit panel noted that the district court had declined to exercise supplemental jurisdiction and dismissed the claim without prejudice to re-file in state court. 696 F.3d at 854-55. *See also Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 882 (N.D. Cal. 2009) (stating that a federal court "may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction"), *aff'd* 696 F.3d 849, 857 (9th Cir. 2012); *California v. General Motors Corp.*, No. 06-cv-05755, 2007 WL 2726871 (N.D. Cal. Sept. 17, 2007) (dismissing federal climate change nuisance claim on political questions grounds and declining to exercise jurisdiction over pendent state nuisance claim). The concurrence in *Kivalina* stated unequivocally that "[d]isplacement of the federal common law does not leave those injured by air pollution without a remedy," and suggested state nuisance law as "an available option to the extent it is not preempted by federal law." 696 F.3d at 866 (Pro, J., concurring). Here, there can be no such preemption because federal law does not address either climate change adaptation damages or Defendants' product design and marketing activities, and therefore cannot preempt Plaintiffs' claims. In any event, as the district court noted, state courts are "entirely capable of adjudicating" whether state laws claims are preempted by federal law, District Ct. Order 3; the possibility of preemption does not result in the erasure of the cause of the action. Moreover, as Plaintiffs persuasively argue, preemption is a defense to state law claims, and cannot provide

the basis for federal court jurisdiction. *See e.g.*, Pl. Brief at 3; *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983)

The Supreme Court jurisprudence, echoed by this Court, is also consistent with the original Fifth Circuit panel's 2009 opinion in *Comer v. Murphy Oil USA*, 585 F.3d 855, 860 (5th Cir. 2009) (*Comer I*), *petition for writ of mandamus denied sub nom. In re Comer*, 562 U.S. 1133 (2011). In *Comer I*, plaintiffs seeking damages for injuries suffered as a result of Hurricane Katrina had invoked federal jurisdiction based on diversity. The Fifth Circuit panel found that a diversity suit brought under state law for damages was materially distinguishable from public nuisance claims brought under federal law and sustained the claims. 585 F.3d at 878-79. (The decision was subsequently vacated when the Fifth Circuit granted rehearing *en banc*; the Fifth Circuit then failed to muster a quorum for the rehearing, thereby effectively reinstating the district court's decision as a matter of law. *Comer v. Murphy Oil USA*, 607 F.3d 1049 (5th Cir. 2010)).

The weight of this precedent is overwhelming, and the district court's remand order is consistent with it. Defendants' argument that Plaintiffs' state law claims challenging one set of behaviors—production, marketing, and sale of a product—should be converted into a federal law claim challenging another set of behaviors—combustion of the product and emission of greenhouse gases—should be rejected. Even if this Court were to accept that there is a federal common law claim that could

apply in this context, its displacement would demand the state law claims be heard on their own terms, and that *all* arguments about preemption, other than complete preemption, be heard in state court.

## CONCLUSION

For the foregoing reasons, Local Government Amici urge this Court to affirm the district court's Order Granting Motions to Remand.

Dated: January 29, 2019

Respectfully submitted,

s/ Michael Burger
Michael Burger, Of Counsel
Morningside Heights Legal Services, Inc.
Columbia Environmental Law Clinic
435 W. 116th St.
New York, NY 10027
212-854-2372
*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: January 29, 2019

s/ Michael Burger
Michael Burger
*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 5,291 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font, a proportionally spaced typeface.

Dated: January 29, 2019

s/ Michael Burger
Michael Burger
*Counsel for Amici Curiae*